UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DAVID NORTH,

                                    Plaintiff

        v.

BRIAN KOHEN et al.,

                                    Defendants

Case No.  2:19-cv-01428-RFB-VCF

SCREENING ORDER ON
SECOND AMENDED COMPLAINT
(ECF No. 11)

Plaintiff, who appears to be a federal pretrial detainee housed at the Nevada Southern Detention Center ("NSDC"), has submitted a second amended civil rights complaint ("SAC") pursuant to 42 U.S.C. § 1983 and has filed a motion for appointment of counsel. (ECF Nos. 11, 12).  The Court now screens Plaintiff's civil rights complaint pursuant to 28 U.S.C. § 1915A and addresses the motion.

**I.      SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails

to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. See Chappel v. Lab. Corp. of Am., 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. See Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. Id.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "Determining

- 2 -

whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Finally, all or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). See Neitzke v. Williams, 490 U.S. 319, 327–28 (1989); see also McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF SAC

In the SAC, Plaintiff sues multiple defendants for events that took place while Plaintiff was housed at the NSDC.  (ECF No. 11 at 1).  Plaintiff sues Defendants Warden Brian Kohen, Assistant Warden Pamela Laurer, Health Service Administrator Paul Ena, Nurse Richard Sutton Jr., Nurse Vogt, Nurse Victoria Griffin, Nurse Smith, CoreCivic, Dr. David Rivas, Nurse Practitioner Jay Peterson, Nurse Jennifer Austin, and John/Jane Does.  (Id. at 2-4).  Plaintiff alleges two counts and seeks declaratory and monetary relief.  (Id. at 11, 16).

The SAC alleges the following:  On May 17, 2019, Plaintiff hit his hand against a metal fence and cut himself; the cut was not severe.  (Id. at 5).  However, later that night during an altercation with another inmate, Plaintiff cut that same hand causing his finger to hurt and bleed.  (Id.)  That night, Plaintiff showed Nurse Vogt the cut on his finger and asked the nurse to clean it with antibiotic ointment and told the nurse that his finger hurt and felt broken.  (Id.)  Vogt told Plaintiff that there was nothing to give him to clean his wound and that he needed to raise the issue with the next shift.  (Id.)

On May 18, 2019, Plaintiff went to morning pill call, showed the nurse his finger, and told the nurse his finger was in pain and felt broken.  (Id.)  Plaintiff's finger had started to swell.  (Id.)  The nurse told Plaintiff to put in a sick call and gave him ointment and a band aid.  (Id.)  Plaintiff put in a sick call explaining that his finger felt broken and hurt.

(Id.)

On May 19, 2019, Plaintiff went to pill call and told Nurse Sutton that his finger was in pain and felt broken. (Id.) By then, Plaintiff's finger was three times the normal size and had puss coming out of the finger. (Id.) Sutton told Plaintiff that his finger was neither broken nor infected but sprained and told Plaintiff to ice it. (Id.)

On May 20, 2019, Plaintiff went to pill call and showed nurse O'Shelle his finger. (Id.) O'Shelle agreed that the finger was infected and that it looked broken. (Id.) O'Shelle advised Plaintiff that she would let Dr. Rivas know and would get Plaintiff medicine, an appointment, and an x-ray. (Id.) Someone prescribed Plaintiff the antibiotic Chephalexin Keflex. (Id.) The pain continued in Plaintiff's finger and became worse. (Id.)

On May 22, 2019, someone sent Plaintiff to medical. (Id.) At medical, Plaintiff showed Nurse Griffin his swollen finger and stated that the antibiotics did not seem to be doing anything to improve the infection and that his finger felt broken. (Id.) Plaintiff asked to see the doctor. (Id.) Griffin stated that she had asked but neither the doctor nor anyone else would see Plaintiff. (Id.)

On May 23, 2019, Plaintiff's swelling had grown worse despite being on the third day of antibiotics. (Id.) When Plaintiff showed Nurses Austin and Smith his finger and asked them for help, they laughed and said it looked bad but did not do anything to help. (Id.) Plaintiff submitted an emergency medical grievance. (Id.)

From May 23, 2019 through May 29, 2019, Plaintiff reached out to numerous staff members for help getting medical treatment. (Id.) Plaintiff explained that the pain was unbearable and that his finger was infected and broken. (Id. at 5-6). By then, Plaintiff's finger was starting to heal wrong and become deformed. (Id. at 6). Numerous staff members called medical for help but each time medical refused to see Plaintiff. (Id.) Plaintiff also asked several nurses at pill call to relay to medical that he needed to see a doctor but medical still refused to let Plaintiff see the doctor. (Id.) On May 27, 2019, Nurse Sutton followed up with Plaintiff. (Id.) Even though the seven-day antibiotics did not work, Sutton gave Plaintiff the same antibiotics, Chephalexin Keflex, for another five

days without consulting a doctor.  (Id.)

On May 29, 2019, Plaintiff spoke to the U.S. Marshals Service auditor about his finger during the facility's annual audit.  (Id.)  The auditor agreed that Plaintiff needed to see a doctor and guaranteed that Plaintiff would see a doctor that day due to the finger's severity.  (Id.)  Plaintiff finally saw Dr. Rivas that day.  (Id.)  As soon as Dr. Rivas saw Plaintiff's finger, Dr. Rivas stated that Plaintiff should have seen a doctor and gotten x-rays.  (Id.)  Dr. Rivas prescribed Plaintiff a stronger antibiotic, Ciprofoxacin, a shot for the infection, and ordered x-rays.  (Id.)  Later that day, HSA Ena and Nurse Austin denied Plaintiff's emergency grievance and stated that Plaintiff was simply upset about his medical treatment and that he needed to fill in a medical request form.  (Id.)

On June 3, 2019, someone took x-rays of Plaintiff's fingers.  (Id.)  On June 5 and 6, 2019, Nurse Peterson, who had seen the x-rays of Plaintiff's severely fractured finger, told Plaintiff "that action should've been taken sooner and he should've been to see a doctor from the beginning."  (Id.)  Someone gave Plaintiff a stronger antibiotic, Amox/Clav Augmentin, and a shot.  (Id.)  By then, Plaintiff's finger had healed wrong, he could not straighten his finger, and his finger resembled a claw.  (Id.)  The doctors determined that Plaintiff needed to see a hand specialist to correct his finger because he could neither straighten it nor use it.  (Id.)

On June 24, 2019, Plaintiff saw an orthopedic hand specialist.  (Id.)  The specialist told Plaintiff that the finger had fused at an angle because it had not been set.  (Id.)  The specialist also stated that the majority of the joint cartilage in Plaintiff's finger had been destroyed by the infection.  (Id.)  The specialist stated that Plaintiff would need surgery but wanted to prolong surgery through therapy.  (Id.)  From July 13, 2019 through August 13, 2019, Plaintiff attended therapy with no improvement to his finger.  (Id.)  At his November 8, 2019, follow up appointment, the specialist wanted Plaintiff to undergo more therapy and use a dynasplint, a finger brace, to try and straighten the finger to regain use.  (Id.)  The U.S. Marshals Service denied additional therapy.  (Id.)  On December 18, 2019, the specialist told Plaintiff to just use the dynasplint to see if there would be any

improvement. (Id.)   There was no improvement. (Id.)  On March 2, 2020, the specialist told Plaintiff that he needed silicone joint replacement surgery. (Id.)  Due to the COVID-19 pandemic, the specialist had to postpone surgery twice. (Id.)

Plaintiff sues Defendants for Fifth (claim 1) and Fourteenth (claim 2) Amendment due process violations. (Id. at 7, 11).

As an initial matter, the Court construes the complaint as seeking relief under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) rather than under 42 U.S.C. § 1983.  *Bivens* established that "compensable injury to a constitutionally protected interest [by federal officials alleged to have acted under color of federal law] could be vindicated by a suit for damages invoking the general federal-question jurisdiction of the federal courts." Butz v. Economou, 438 U.S. 478, 486 (1978).

The NSDC, a private prison operated by CoreCivic, has a contract with the U.S. Marshals Service to house federal inmates.[1]  In Corr. Servs. Corp. v. Malesko, 534 U.S. 61 (2001), the Supreme Court declined to extend *Bivens* to permit recovery against a private corporation operating a halfway house under contract with the Federal Bureau of Prisons. Id. at 63.  The Supreme Court declined to recognize a federal remedy at law for alleged constitutional deprivations committed by private entities acting under color of federal law.  Id. at 66.  As such, Plaintiff may not bring a civil rights claim against CoreCivic.  The Court dismisses Defendant CoreCivic with prejudice, as amendment would be futile.

The Supreme Court has also held that an inmate cannot bring a *Bivens* action against an employee of a private entity for damages pursuant to alleged Eighth Amendment violations. Minneci v. Pollard, 565 U.S. 118, 131 (2012).  In Minneci, the Supreme Court held that:

---

[1] *See* U.S. Marshals Service at http://www.usmarshals.gov/prisoner/index.html (last visited on August 12, 2020); *see also* CoreCivic at https://www.corecivic.com/facilities/nevada-southern-detention-center (last visited on August 12, 2020).

> [W]here . . . a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law. We cannot imply a *Bivens* remedy in such a case.

Id.

In this case, the Court finds that Plaintiff cannot sue the various private prison defendants in a Bivens action based on improper medical care. Although Plaintiff is raising claims under the Due Process Clause as a pretrial detainee rather than the Eighth Amendment as a convicted inmate, Plaintiff's claims are about receiving improper medical care at the facility. These types of claims, such as negligence and medical malpractice, fall within the scope of traditional state tort law. As such, the Court dismisses these claims without prejudice but without leave to amend in this Court. If Plaintiff seeks to raise improper medical care claims against the employees at NSDC, he must file a lawsuit in state court. Accordingly, the Court dismisses the entire complaint without prejudice with leave to file a state tort action in state court.

## III.    MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed a motion for appointment of counsel. (ECF No. 12). A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil rights claims. Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981). Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances." Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. "Neither of these considerations is dispositive and instead must be viewed together." Id. In the instant case, the Court does not find exceptional circumstances that warrant the

appointment of counsel.  The Court denies the motion for appointment of counsel without prejudice.

**IV.    CONCLUSION**

IT IS ORDERED that the operative complaint is the second amended complaint (ECF No. 11).

IT IS FURTHER ORDERED that the second amended complaint (ECF No. 11) is dismissed in its entirety without prejudice but without leave to amend in this Court.

IT IS FURTHER ORDERED that if Plaintiff seeks to pursue his improper medical care claims, he will file a complaint in state court.

IT IS FURTHER ORDERED that the motion for appointment of counsel (ECF No. 12) is denied without prejudice.

IT IS FURTHER ORDERED that this Court certifies that any *in forma pauperis* appeal from this order would not be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3).

IT IS FURTHER ORDERED that the Clerk of the Court close this case and enter judgment accordingly.

DATED THIS  28th day of September, 2020.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE

- 8 -